**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

GARY R. BUTTS, JR.,

                                Plaintiff,                    3:16-CV-874
                                                              (CFH)
        v.


COMMISSIONER OF SOCIAL
SECURITY,

                                Defendant.
_____

**APPEARANCES:**                                   **OF COUNSEL:**

LAW OFFICES OF STEVEN R. DOLSON        STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, New York 13202
Attorneys for plaintiff

U.S. SOCIAL SECURITY ADMIN.             PRASHANT TAMASKAR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER

        Currently before the Court, in this Social Security action filed by Gary Butts

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on

the pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 14 and

18.)  For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted, and Defendant's motion for judgment on the pleadings is denied.

# I.      BACKGROUND

## A.      Facts

Plaintiff was born in 1972, making him forty years old at the alleged onset date and forty-three years old at the date of the ALJ's decision.  T. 36.[1]  Plaintiff reported obtaining a General Education Diploma and that he attended vocational school for small engine repairs.  Plaintiff has past work as a tractor-trailer driver.  Id.  Generally, Plaintiff alleges disability due to thoracic back pain, bulging discs in his spine, diabetes, high blood pressure and cholesterol, depression, and his left leg being shorter than the right.

## B.      Procedural History

Plaintiff applied for Disability Insurance Benefits on October 11, 2013, alleging disability beginning January 17, 2013.  Plaintiff's application was initially denied on December 16, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  T. 96-99, 104.  Plaintiff appeared at a hearing before ALJ Laura Michalec Olszewski on May 22, 2015.  Id. at 30-80.  On June 4, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Id. at 10-29.  On June 3, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Id. at 1-4.

---

[1]      The Administrative Transcript is found at Dkt. No. 11.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and

conclusions of law.  T. 15-23.  First, the ALJ found that Plaintiff meets the insured status

requirements of the Social Security Act through December 31, 2018.[2]  Id. at 15.

Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since

January 17, 2013, the alleged onset date.  Id. Third, the ALJ found that Plaintiff's

alleged impairments including degenerative disc disease ("DDD") of the thoracic spine,

status post left ankle fusion, and obesity are severe impairments, while Type I diabetes,

high cholesterol, high blood pressure, and depression are not severe.  Id. at 15.  Fourth,

the ALJ found that Plaintiff does not have an impairment or combination of impairments

that meets or medically equals one of the listed impairments in 20 C.F.R. § 404,

Subpart P, App. 1 (the "Listings").  Id.  Specifically, the ALJ considered Listings 1.02

(major dysfunction of a joint), 1.04 (disorders of the spine), and 12.00 (adult mental

disorders).  Id.  Fifth, the ALJ found that Plaintiff has the residual functional capacity

("RFC") to

> lift/carry ten pounds occasionally; sit for six hours in an
> eight-hour workday; stand for two hours in an eight-
> hour workday; and walk for two hours in an eight-hour
> workday.  The claimant may sit or stand at his option,
> meaning he needs the freedom to alternate from sitting
> to standing as much or as little as he deems necessary.
> The change from one position to the other does not
> interrupt the claimant's ability to remain on task.  He
> can occasionally climb ramps and stairs, but he should
> never climb ladders or scaffolds, and he should not
> balance.  The claimant can occasionally stoop, twist,

---

[2] Though the ALJ's decision twice indicates December 31, 2018 as Plaintiff's date last insured, elsewhere
in the record Plaintiff's date last insured is listed as December 31, 2017.  T. 13, 15, 81, 93, 233, 281.  It is
unclear whether the ALJ's finding contains a typographical error for this date.

> push, pull and reach overhead, and he can frequently
> reach in all other directions.  Finally, he can frequently
> handle, finger and feel, although he should never
> kneel, crouch or crawl.

Id. at 18.  Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work.

Id. at 21.  Lastly, the ALJ found that there are jobs that exist in significant numbers in

the national economy that Plaintiff can perform including order clerk (food and

beverage), document preparer, and charge account clerk.  Id. at 21-22.  The ALJ

therefore concluded that Plaintiff is not disabled.


### D.   The Parties' Briefings on Their Cross-Motions

#### 1.   Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes four arguments in support of his motion for judgment

on the pleadings.  Dkt. No. 14, at 4-16 (Pl.'s Mem. of Law).  First, Plaintiff argues that

the ALJ committed reversible error by failing to apply the treating physician rule.  Id. at

4-9.  Specifically, Plaintiff argues that the opinion of Plaintiff's treating physician,

Jennifer Wiley, M.D., should be afforded controlling weight for three reasons: (1) Dr.

Wiley's opinion is well-supported by medically acceptable clinical and laboratory

diagnostic techniques including Plaintiff's treatment for thoracic spine, left leg, and ankle

impairments, two MRIs of the thoracic spine, and an X-ray of the left ankle; (2) Dr.

Wiley's opinion is consistent with other substantial evidence in the record including Dr.

Wiley's own treatment notes and the findings of consultative examiner Tanya Perkins-

Mwantuali, M.D.; and (3) Dr. Wiley is in the best position to have personal knowledge of

Plaintiff's limitations as his treating physician.  Id. at 5-7.  Plaintiff also argues that the

ALJ did not provide good reasons for assigning less than controlling weight to Dr.

Wiley's opinion, failed to properly assess the treatment relationship between Dr. Wiley and Plaintiff, and failed to recontact Dr. Wiley for clarification regarding any ambiguity in her opinion. Id. at 7-8. Plaintiff also argues that even if Dr. Wiley's opinion is not entitled to controlling weight, the ALJ failed to specifically and appropriately address the requisite factors in considering Dr. Wiley's opinion. Id. at 8.

Second, Plaintiff argues that the Appeals Council failed to consider new and material evidence provided by Plaintiff's treating physician. Pl.'s Mem. of Law at 9-11. Specifically, Plaintiff argues that a June 17, 2015, opinion from Dr. Wiley is new because it did not exist in the file at the time the ALJ issued her decision on June 4, 2015. Id. at 10. Plaintiff argues that the opinion is both material and probative because it is relevant to Plaintiff's conditions during the time period for which benefits were denied. Id. Plaintiff notes that Dr. Wiley's opinion states that Plaintiff is 100 percent disabled based on impairments diagnosed as of his alleged onset date and argues that the opinion establishes that these impairments and resulting limitations existed through the date of the ALJ's decision. Id. Plaintiff also argues that, although this opinion touches on the ultimate issue of disability, which is reserved to the Commissioner, it serves as additional supporting evidence that the Commissioner may not ignore.[3] Id.

Third, Plaintiff argues that the ALJ committed reversible error by failing to assess his credibility properly. Pl.'s Mem. of Law at 11-15. Specifically, Plaintiff argues that the ALJ failed to adequately discuss the numerous factors outlined in 20 C.F.R. § 404.1529(c)(3) when making her credibility determination. Id. at 13. Plaintiff argues

---

[3] The Court notes that Dr. Wiley did not date the opinion at Exhibit 25F, but the Court Transcript Index notes the date of this opinion as April 23, 2015. T. 652. Further, this opinion and Dr. Wiley's treatment notes at Exhibit 26F indicate that the most recent examination by Dr. Wiley was on April 23, 2015. Id. at 646-52, 653-55.

5

that the ALJ improperly discounted his credibility based on his conservative treatment and daily activities.  Id. at 13-14.  Plaintiff also argues that the ALJ improperly concluded that he is less than credible because he experienced significant benefit from a right thoracic radiofrequency nerve ablation.  Id. at 14.  Plaintiff contends that the ALJ failed to provide a specific, accurate discussion of his credibility which ultimately prevents meaningful review because the ALJ did not fully explain how she formulated her decision.  Id. at 15.

Fourth, Plaintiff argues that the ALJ committed reversible error by issuing an unfavorable decision based on an unsupported RFC.  Pl.'s Mem. of Law at 15-16. Specifically, Plaintiff argues that the evidentiary basis for RFC limitations regarding occasional overhead reaching and frequent reaching in all other directions is unclear. Id. at 15.  Plaintiff argues that, although the ALJ purportedly based the RFC on the opinions of Dr. Perkins-Mwantuali and Marco Berard, M.D., Dr. Berard did not reach a conclusion as to Plaintiff's ability to reach, and Dr. Perkins-Mwantuali opined a marked limitation for reaching.  Id. at 15-16.  Plaintiff notes that Dr. Perkins-Mwantuali did not differentiate between Plaintiff's ability to reach overhead and his ability to reach in other directions.  Id.  Plaintiff also argues that the ALJ failed to specify the evidence that she relied on when assigning reaching limitations to Plaintiff that are less restrictive than those contained in Dr. Perkins-Mwantuali's opinion, despite affording that opinion great weight.  Id. at 16.  Plaintiff contends that there is no evidentiary basis for the ALJ's distinction between occasional overhead reaching and frequent reaching in all other directions since Dr. Perkins-Mwantuali did not distinguish between those types of reaching.  Id.

**2.     Defendant's Motion for Judgment on the Pleadings**

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings.  Dkt. No. 18, at 7-16 (Def.'s Mem. of Law).  First, Defendant argues that the ALJ properly weighed Dr. Wiley's opinion.  Id. at 7-11.  Specifically, Defendant argues that the ALJ appropriately declined to afford controlling weight to Dr. Wiley's opinion because it was inconsistent with other substantial evidence of record (including Dr. Berard's opinion) and because parts of Dr. Wiley's opinion were not supported by medically acceptable clinical and laboratory diagnostic techniques.  Id. at 7.  Defendant further argues that Dr. Berard's opinion that Plaintiff could effectively perform sedentary work directly contradicts Dr. Wiley's opinion, and that the other opinion evidence in the record also contradicts Dr. Wiley's findings, including Dr. Perkins-Mwantuali's finding of no sitting limitations.  Id. at 7-8.

Defendant also argues that, although Dr. Perkins-Mwantuali found marked restrictions for walking and standing, the Commissioner's standard interpretation of marked limitations would not preclude sedentary work based on either of these activities.  Def.'s Mem. of Law at 8.  Defendant also argues that the ALJ afforded some weight to the January 24, 2013, opinion of orthopedic surgeon Bradley D. Wiener, M.D., which did not identify any sitting, standing, or walking limitations.  Id.  Defendant contends that none of the other medical opinions in the record identified limitations that would wholly preclude sedentary work as Dr. Wiley found, indicating her opinion was therefore inconsistent with other substantial evidence and not entitled to controlling weight.  Id. Defendant also argues that the ALJ noted that aspects of Dr. Wiley's opinion, particularly her findings on absences and the need to recline, were

unexplained; thus, they were not supported by medically-acceptable clinical and laboratory diagnostic techniques. Id. at 9.

Defendant also argues that the regulations require only that an ALJ re-contact a treating physician when there is insufficient evidence to assess the claimant's condition, and that follow up with Dr. Wiley was unnecessary because the ALJ already had a complete medical history and there were no obvious gaps in the administrative record. Def.'s Mem. of Law at 9. Defendant also argues that, even if Dr. Wiley provided a persuasive and thorough explanation for her findings, the ALJ still would not have accorded her opinion controlling weight because it was inconsistent with other substantial evidence, and that the ALJ was, therefore, not required to re-contact her. Id.

Defendant contends that the ALJ needed to only consider the factors listed in 20 C.F.R. § 404.1527(c) to properly assess the opinions because Dr. Wiley's treating opinion was not entitled to controlling weight. Def.'s Mem. of Law at 9-10. Defendant argues that the ALJ appropriately considered the relevant factors when weighing this opinion. Id. at 10. Defendant argues that the ALJ found that the length of the treatment relationship did not outweigh the fact that Dr. Wiley was not an orthopedic specialist. Id. Defendant argues that the ALJ considered the nature of the treatment relationship -- including number of visits -- but found that it did not outweigh other factors. Id.

Second, Defendant argues that evidence submitted to the Appeals Council was not material. Def.'s Mem. of Law at 11-13. Specifically, Defendant argues that, although Dr. Wiley's June 17, 2015, opinion was new, it was not material because it did not render the ALJ's conclusion contrary to the weight of the evidence in the record. Def.'s Mem. of Law at 12. Defendant argues that Dr. Wiley opined on an issue reserved

8

to the Commissioner and such a statement is not a medical opinion entitled to any special significance.  Id.  Defendant argues that this opinion did not alter the balance of the evidence because it did not remedy the weaknesses identified by the ALJ regarding Dr. Wiley's previous opinion or contain any new information about Dr. Wiley's perception of Plaintiff's condition.  Id. at 12-13.

Third, Defendant argues that the ALJ properly assessed Plaintiff's credibility. Def.'s Mem. of Law at 13-15.  Specifically, Defendant argues that the ALJ properly applied 20 C.F.R. § 404.1529(c)(3) when concluding that Plaintiff's allegations of disability were not entirely credible.  Id. at 14.  Defendant argues that the ALJ accurately noted that diagnostic imaging showed only minor degenerative changes and that the ALJ considered the treatment Plaintiff received (including conservative treatment of his back pain involving right thoracic radiofrequency ablation -- and without surgery -- as well as ankle fusion surgery that worked well), whether the treatment improved his symptoms, and Plaintiff's ability to participate in a variety of daily activities.  Id. Defendant argues that, in doing so, the ALJ applied the relevant credibility factors and identified specific-record based reasons for her ruling such that the ALJ's rationale can be gleaned from her decision.  Id. at 14-15.

Fourth, Defendant argues that the ALJ's RFC, particularly with respect to reaching limitations, is supported by substantial evidence.  Def.'s Mem. of Law at 15-16. Specifically, Defendant argues that the ALJ balanced Dr. Berard's findings of no reaching limitations with Dr. Perkins-Mwantuali's opined marked limitations and reasonably found that Plaintiff could reach overhead frequently.  Id.  Defendant also argues that the ALJ accounted for Dr. Perkins-Mwantuali's finding that Plaintiff had

marked limitations in carrying above the shoulder, an activity that requires many of the same movements as reaching overhead.  Id. at 16.

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983), Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work.  Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.  Under the
> cases previously discussed, the claimant bears the burden of
> the proof as to the first four steps, while the [Commissioner]
> must prove the final one.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); accord McIntyre v. Colvin, 758

F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20,

24 (2003).


### III.    ANALYSIS

#### A.    Whether the ALJ Properly Considered the Opinion Evidence

The Second Circuit has long recognized the 'treating physician rule' set out in 20

C.F.R. § 404.1527(c).  "'[T]he opinion of a claimant's treating physician as to the nature

and severity of the impairment is given 'controlling weight' so long as it is 'well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in the case record.'"  Greek v.

Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128

(2d Cir. 2008)).  However, there are situations where the treating physician's opinion is

not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter*

*alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of

medical evidence supporting the opinion; (3) the consistency of the opinion with the

remaining medical evidence; and (4) whether the physician is a specialist.'"  Greek, 802

F.3d at 375 (quoting <u>Selian v. Astrue</u>, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  <u>Blinkovitch v. Comm'r of Soc. Sec.</u>, 15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), <u>Report and Recommendation adopted by</u> 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017)) (citing <u>Atwater v. Astrue</u>, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  <u>Greek</u>, 802 F.3d at 375 (quoting <u>Burgess</u>, 537 F.3d at 129).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

Here, the ALJ afforded "great weight" to the opinions of Dr. Berard (who performed multiple independent medical examinations) and consultative examiner Dr. Perkins-Mwantuali.  T. 18, 21, 476-78, 503-07, 571-78.  The ALJ afforded "some weight" to Dr. Wiener's opinion (based on an independent medical examination) and "less weight" to Dr. Wiley's opinion.  <u>Id.</u> at 20, 385-90, 645-52.  Regarding Dr. Wiley's opinion, the ALJ stated that it was not entitled to more weight because Dr. Wiley is not an orthopedic surgeon like Dr. Berard, she did not explain why Plaintiff must recline or why he would miss work three days per month, and her treatment relationship with Plaintiff -- characterized by the ALJ as every forty-five days for a period of less than eighteen months -- did not constitute a "significant number of visits" and therefore did

"not garner her opinion any additional weight to overcome her lack of orthopedic expertise." Id. at 20.

Plaintiff argues that Dr. Wiley's opinion should have been afforded controlling weight and that the ALJ did not provide good reasons for assigning less than controlling weight to Dr. Wiley's opinion. Pl.'s Mem of Law at 5-9. The Court agrees that the ALJ's reasons for discounting the opinion of Plaintiff's treating physician are insufficient and therefore finds that remand is required to address this error.

The ALJ's analysis of Dr. Wiley's opinion, on its face, considers the factors set out in 20 C.F.R. § 404.1527(c) including the length of the treatment relationship, number of visits, and Dr. Wiley's lack of specialty as an orthopedic specialist. T. 20. However, nominal consideration of these factors is insufficient where, as here, the ALJ fails to provide a meaningful analysis from which this Court can determine whether the findings are supported by substantial evidence. First, the ALJ's analysis fails to address the true length of Plaintiff's treatment with Dr. Wiley. Plaintiff testified that he treated with primary care physician Dr. Wiley and nurse practitioner ("NP") Susan Stein. Id. at 59. Treatment records at Exhibits 2F, 5F, 9F, 23F, and 26F from Susquehanna Family Practice and UHS Primary Care Oneonta span from February 2011 to April 2015. Id. at 348-68, 376-84, 410-41, 586-98, 653-709. Although Dr. Wiley's opinion at Exhibit 25F indicates that she first treated Plaintiff on December 4, 2013, the record indicates she first cosigned a treatment note from NP Stein on April 7, 2011, which would suggest that she played a role in Plaintiff's care at least four years prior to the ALJ's decision and would, therefore, be familiar with Plaintiff's impairments prior to his January 17, 2013, alleged onset date. Id. at 81, 365. Dr. Wiley cosigned subsequent treatment notes on

June 21, 2011, August 17, 2011, October 6, 2011, and December 10, 2012. Id. at 354, 358, 361, 378. The ALJ's analysis of Dr. Wiley's opinion does not address this earlier supervisory role in Plaintiff's treatment. Id. at 20.

Second, although the ALJ indicated that Dr. Wiley did not explain why Plaintiff must recline or why he would miss work three days per month, Dr. Wiley's opinion clearly reflects the diagnosis and assessment of Plaintiff's thoracic spine and ankle pain. T. 20, 646-52. For example, Dr. Wiley indicated these impairments would cause Plaintiff to have "good days" and "bad days," his symptoms would frequently be severe enough to interfere with attention and concentration, and these symptoms would likely increase if Plaintiff was placed in a competitive work environment. Id. at 646, 650, 651. Additionally, any failure by Dr. Wiley to explicitly indicate the basis for these two specific limitations does not suggest that Dr. Wiley's opinion as a whole was entitled to less weight.

Third, although Dr. Wiley is not an orthopedic specialist like Dr. Berard, neither is consultative examiner Dr. Perkins-Mwantuali, who specializes in internal medicine and pediatrics. T. 507. In affording Dr. Perkins-Mwantuali's opinion great weight despite her lack of orthopedic specialty, the ALJ inconsistently applies this specialization distinction when considering the opinion evidence. Id. at 18, 19. Furthermore, the ALJ's affordance of weight regarding the opinions of Drs. Wiley and Wiener is somewhat ambiguous. Id. at 20. The ALJ afforded "some" weight to Dr. Wiener's January 15, 2013, opinion while affording "less" weight to Dr. Wiley's opinion despite acknowledging that Dr. Wiener noted Plaintiff was still working without restrictions in a full-time capacity at the time his opinion was rendered. Id. at 20. The lack of a clear

explanation of the ALJ's analysis is troubling in light of the facts that Dr. Wiener's opinion is dated prior to Plaintiff's January 17, 2013 onset date and that it is more inconsistent with the RFC determination than Dr. Wiley's opinion.  Id. at 81, 385-90.

Finally, the ALJ's analysis of the opinion evidence fails to address consistencies between the opinions of Drs. Wiley, Berard, and Perkins-Mwantuali that call into question Plaintiff's ability to perform the modified range of sedentary work described in the ALJ's RFC.  Dr. Wiley opined that Plaintiff needed to sit in a reclined position and that he could stoop for an hour or less.  T. 647-49.  Dr. Berard opined that Plaintiff was not totally disabled and was suitable for light duty work such as a strict sedentary position with no bending, stooping, or crawling.  Id. at 476-78, 571-78.  Dr. Perkins-Mwantuali opined that Plaintiff had a marked limitation with bending and twisting.  Id. at 507.  Three medical sources therefore submitted opinions indicating significant restrictions in Plaintiff's ability to bend, stoop, and/or twist.  This is especially significant because SSR 96-9p states that occasional stooping is required in most unskilled sedentary occupations, yet these MEDICAL opinions suggest that plaintiff has a less than occasional stooping ability.  SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996).  In the RFC, the ALJ restricted Plaintiff to occasional stooping and twisting and clarified that Dr. Berard's restrictions regarding bending and stooping were not consistent with the record as a whole because of Plaintiff's own testimony regarding his ability to "regularly" get in and out of a motor vehicle.  T. 18, 19.  However, when rejecting Dr. Berard's bending and stooping limitations, the ALJ failed to assess its consistency with the limitations opined by Drs. Wiley and Perkins-Mwantuali.  Id. at 19.  It must also be noted that the ALJ appears to rely solely on Plaintiff's testimony to discount these bending and

16

stooping limitations despite her own adverse credibility finding, an inconsistency that presents another challenge to this Court's ability to determine whether the ALJ's findings are supported by substantial evidence.  Id. 19-20.

Much like the ALJ's reasons for discounting Dr. Wiley's opinion, the Court finds that the ALJ's explanation for declining to adopt Dr. Berard's opined bending and stooping restrictions to be insufficient.  Plaintiff's reported ability to get into and out of a car does not provide substantial evidence on which to discount an opined limitation from an orthopedic surgeon indicating that plaintiff can perform no bending or stooping -- an opinion to which the ALJ otherwise afforded great weight and used to discount the opinion of Plaintiff's treating physician.  Notably, the ALJ fails to cite any medical or objective evidence supporting her rejection of the stooping and bending limitations. Because the ALJ did not provide good reasons for discounting limitations opined by Drs. Wiley and Berard, it is not clear that her analysis of the opinion evidence is supported by substantial evidence.  This error is not harmless because it casts doubt on Plaintiff's ability to engage in even the modified range of sedentary worked determined by the ALJ.  Remand is therefore necessary on this basis for appropriate consideration of the opinion evidence.

### B.    Whether the Appeals Council Properly Assessed Post-Decision Evidence

Because remand is necessary and the Commissioner will be required to consider this additional evidence when issuing a new decision on remand, the Court declines to reach a finding regarding whether the Appeals Council properly assessed the post-decision evidence.

17

### C.   Whether the ALJ Properly Evaluated Plaintiff's Credibility

Because remand is necessary and the Commissioner will be required to address the above-noted deficiencies in evaluating the opinion evidence, she should also conduct a new credibility determination as part of that review.

### D.   Whether the RFC Is Supported by Substantial Evidence

Because remand is necessary and the Commissioner will be required to address the above-noted deficiencies in considering the opinion evidence when issuing a new decision, the Court declines to reach a finding regarding Plaintiff's arguments on the reaching limitations included in the ALJ's RFC.  Pl.'s Mem of Law at 15-16.  However, on remand, the Commissioner should carefully consider the opined limitations and provide a sufficiently clear explanation for her analysis of the opinion evidence and the RFC.

## IV.  CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is

**REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings

consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: January 11, 2018
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge